# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANLIN INDUSTRIES, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>PAUL BURGESS,<br><br>Defendant. | 1:05cv1317 DLB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION<br>(Document 82-1)<br><br>ORDER DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br>(Document 85-1) |

On December 21, 2006, Plaintiff Anlin Industries, Inc. ("Anlin") filed the instant motion for summary judgment, or in the alternative summary adjudication. The motion was heard on February 13, 2007, before the Honorable Dennis L. Beck, United States Magistrate Judge. John G. Michael appeared on behalf of Anlin. Defendant Paul Burgess appeared pro se.

**BACKGROUND**

On October 19, 2005, Anlin filed a complaint against Defendant alleging the following: (1) violations of the Anticybersquatting Consumer Protection Act; (2) infringements of federally registered trademarks in violation of 15 U.S.C. § 1114(1); (3) unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) trademark infringement under state common law; (5) trademark infringement under California law; and (6) unfair competition under state common law. These allegations are based on Defendant's registration and use of domain

names alleged to be identical or confusingly similar to Anlin's federally registered and unregistered trademarks and trade names.

Defendant filed his answer and counterclaim on January 12, 2006. After the Court granted Anlin's motion to strike portions of the answer and counterclaim, Defendant filed an amended answer and counterclaim on May 19, 2006. On August 9, 2006, the Court granted Anlin's motion to dismiss the counterclaims with leave to amend.

Defendant filed his third amended answer and counterclaims on September 6, 2006. He set forth numerous affirmative defenses and attempted to allege eight counterclaims. On November 8, 2006, the Court granted Anlin's motion to dismiss and dismissed Defendant's counterclaims and all but one affirmative defense without leave to amend. Defendant was allowed leave to state an estoppel defense.

In the parties' November 22, 2006, Joint Status Report, Defendant indicated that he was researching the estoppel defense and would be bringing a motion to amend his answer to include the affirmative defenses of promissory estoppel, "fair use/first use" and acquiescence.

On December 21, 2006, Anlin filed its motion for summary judgment, moving for summary judgment on its first and second causes of action for cybersquatting.

On December 24, 2006, Defendant filed his motion to amend his answer pursuant to Federal Rule of Civil Procedure 15(a). The Court denied this motion on February 6, 2007, and Defendant filed his amended answer on February 9, 2007.

On January 12, 2007, Defendant filed his opposition to summary judgment. He also asserts a cross-motion for summary judgment and requests summary judgment on causes of action three through seven.

On January 19, 2007, Anlin filed its reply, arguing that Defendant's opposition and cross-motion are procedurally and substantively defective.

On January 22, 2007, Defendant filed two declarations- one in support of his opposition and one in support of his cross-motion. He also filed a separate statement of undisputed facts in opposition and in support of his cross-motion, as well as numerous exhibits.[1]

On January 24, 2007, the Court continued the hearing on the motions for summary judgment and set a briefing schedule for Defendant's cross-motion.

Anlin filed its response to Defendant's Statement of Undisputed Facts on January 30, 2007.

## UNDISPUTED FACTS

Anlin, a manufacturer of vinyl replacement doors and windows, filed Articles of Incorporation in 1991 and began manufacturing its products under a license agreement with Certainteed Corporation. Declaration of Eric Vidmar ("Vidmar Dec.") ¶¶ 2-3. The name "Anlin" is a combination of the middle name of the founder of the company and his wife's first name. The founder's middle name is Antone and his wife's name is Linda. The first few letters of each name forms "Anlin." Vidmar Dec. ¶ 2.

Under the license agreement with Certainteed, Anlin manufactured windows for Certainteed but was permitted to manufacture its own brand of windows and doors. Vidmar Dec. ¶ 3. The windows manufactured for Certainteed, as well as the sales literature created for Certainteed, contained stickers identifying Anlin as the source of the windows. Vidmar Dec. ¶ 3. Delivery trucks contained both the Certainteed and Anlin names. Vidmar Dec. ¶ 3. Anlin produced windows for Certainteed and its own brand from 1991 through 2001. Vidmar Dec. ¶ 3. In addition, from 1993 through 2001, Anlin sold a line of patio doors and custom made windows under the Anlin name. Vidmar Dec. ¶ 3.

---

[1] On January 23, 2007, Anlin filed objections to Defendant's late filed papers and evidence. Anlin objects to the two declarations and statement of undisputed facts, arguing that they were filed late and without any authority or leave of court. As to the procedural objections, the Court's January 24, 2007, order continuing the hearing and setting a briefing schedule moots these objections. Anlin also submits numerous evidentiary objections, which have been considered in setting for the undisputed facts. The disposition of Anlin's objections is for purposes of this motion only, and Anlin will not be deemed to have waived any objections.

1   On March 30, 1998, Anlin registered the domain name "www.anlin.com." Vidmar Dec. ¶ 4. Prior to the year 2001, when the license agreement with Certainteed was set to expire, Anlin decided not to renew the agreement and prepared to enter the market with a full line of windows and doors without the Certainteed name. Vidmar Dec. ¶ 4. In preparation, Anlin created sales literature, truck logos, t-shirts and other promotional merchandise with the logos "Anlin Windows" and "Anlin Window Systems." Vidmar Dec. ¶ 4. It also created new stickers with the logos to be applied to windows before delivery. Vidmar Dec. ¶ 4. Anlin made presentations to dealers who sold Certainteed windows in an effort to persuade them to carry its new line. Vidmar Dec. ¶ 4.

On September 27, 2000, Anlin filed an application with the U.S. Patent and Trademark Office to register the mark "Anlin Windows." The mark was first used in commerce on April 1, 2001, and was registered on July 30, 2002, as Reg. No. 2602374. Vidmar Dec. ¶ 5; Exhibit 31, attached to Defendant's Reply. On November 19, 2002, Anlin applied to register the mark "Anlin Window Systems." That mark was registered on December 2, 2003, as Reg. No. 2788866. Vidmar Dec. ¶ 5. Anlin's marks "Anlin Windows" and "Anlin Window Systems" are used on its products, trucks and materials. Vidmar Dec. ¶ 10.

Over the years, Anlin has spent millions of dollars advertising and promoting its windows and is now the leading manufacturer of replacement windows and doors with approximately $65 million in annual sales. Vidmar Dec. ¶ 6. Anlin sells its windows and doors in several states, although the bulk of its business is in California. Vidmar Dec. ¶ 6. Anlin uses its website "www.anlin.com" as a means of educating the public and dealers about its products. Vidmar Dec. ¶ 6.

Anlin does not sell directly to consumers. Rather, it sells its windows and doors through a network of approximately 40 dealers. Vidmar Dec. ¶ 6. This dealer network is very important to Anlin's business, as the industry competes for both window sales and dealers. Vidmar Dec. ¶ 6. Anlin and Defendant are not competitors.

Defendant first learned of Anlin during the period Anlin was promoting its new line, which was late 2000 or early 2001. Deposition of Paul Burgess ("Burgess Dep.") 19:18-21; 20:6-

4

12, Vidmar Dec. ¶ 4. Defendant recalls Matt Infeld coming to Ultimate Home Windows and presenting the new windows. Burgess Dep., 22:28-23:9. This trip was made before April 2001. Vidmar Dec. ¶ 4.

On April 27, 2001, Defendant registered the domain name "www.anlinwindows.com." Burgess Dep. 40:16-19. Defendant was aware of Anlin before he registered the domain name and knew that Anlin had already registered "www.anlin.com" as its corporate web site. Burgess Dep. 43:23-44:8; 47:2-5; 47:19-21; 51:11-17; 52:15-53:5; 53:19-54.5. Defendant did not use "www.anlinwidows.com" until 2003, when he started using the web site to attract potential purchasers and develop leads to sell windows. Burgess Dep., 40:16-23; 48:24-49:6. He also used the site to educate consumers. Burgess Dep., 67:17-25.

Defendant used the word "Anlin" as a meta tag to draw potential customers searching the web to his site. Burgess Dep., 46:9-14. The only thing that distinguishes Defendant's domain name from Anlin's trademark "Anlin Windows" is the .com at the end. Burgess Dep. 48:16-23. Beginning in 2004, the home page on Defendant's site included the banner "Welcome to Anlin Windows." Burgess Dep., 73:5-8. The web site contained a picture of Anlin's manufacturing facility and truck, as well as Anlin's copyrighted sales material straight from its brochures. Burgess Dep. 131:9-133:11.

The site posted a "disclaimer"[2] at the top of the page and included a direct link to Anlin's corporate web site, "www.anlin.com." Exhibit 16, attached to Defendant's Undisputed Facts. The site never stated that it was the official corporate website of Anlin, or that it was sponsored by Anlin. Burgess Cross-Motion Dec. ¶ 12.

Defendant traveled throughout Northern and Southern California at his own expense selling and installing Anlin's windows. Burgess Cross-Motion Dec. ¶ 6.

Anlin did not send Defendant a cease and desist letter in 2003 or 2004. Exhibit 36 and 37, attached to Defendant's Undisputed Facts.

---

[2] Anlin objects to the characterization of the language as a disclaimer. However, whether the language is or is not a disclaimer is irrelevant to the outcome of this motion.

On February 22, 2004, Defendant registered the domain name "www.anlinwindows.net." Declaration of John G. Michael ("Michael Dec.") ¶ 2. On March 21, 2004, Defendant registered the names "www.anlinwindows.org," "www.anlin-windows.com" and "www.anlin-windows.net." Michael Dec. ¶ 3. Defendant has never used these four web sites for any purpose. Burgess Dep. 116:11-117:13; 148:23-149:6.

During late 2004 and early 2005, Anlin received complaints from four of its dealers about Defendant's web sites.[3] Vidmar Dec. ¶ 7; Declaration of Annette Legaspi ("Legaspi Dec.") ¶ 3; Declaration of Teri Zingarelli ("Zingarelli Dep."), ¶ 3; Declaration of Scott Sharples ("Sharples Dec.") ¶ 3.

Each dealer expressed that they believed the site was confusing and deceiving, and could divert business from dealers who had spent money and effort to develop leads. Vidmar Dec. ¶ 7; Legaspi Dec. ¶ 3; Zingarelli Dec. ¶ 3; Sharples Dec. ¶ 3. They believed it was unfair for Defendant to reap the benefits of the advertising expenses that they incurred to promote the Anlin name. Vidmar Dec. ¶ 7; Legaspi Dec. ¶ 3; Zingarelli Dec. ¶ 3; Sharples Dec. ¶ 3.

The four dealers who complained compromised approximately $10 million of Anlin's annual business. Vidmar Dec. ¶7. In response, Anlin contacted Defendant and explained that Anlin and its dealers objected to his use of the web site. Vidmar Dec. ¶ 7. During the course of the conversations about the web site in 2005, Defendant offered to sell the domain names to Anlin for $100,000.[4] Vidmar Dec. ¶ 7; Burgess Dep., 102:1-20; 124:24-125:3. Anlin refused to pay this amount. Vidmar Dec. ¶ 7.

Defendant was notified to stop using Anlin's name and marks in the domain name, but he continued to do so. Vidmar Dec. ¶ 7; Burgess Dep., 138:1-139:3. Defendant placed Anlin's

---

[3] The parties vehemently dispute the dates of the dealer complaints and date Anlin first became aware of Defendant's site. The Court is not making a determination as to this issue because it is irrelevant to the analysis of this motion.

[4] Defendant objects to the introduction of the offer of $100,000 because he characterizes it as statements made in "compromise negotiations" that are excluded under Rule 408. However, the evidence is not offered to prove the validity or amount of the claim, but rather as an element of bad faith. Such use is not prohibited under Rule 408.

6

1  copyrighted material on his website without permission.  Vidmar Dec. ¶ 11; Burgess Dep.,
2  139:7-23.
3       During his deposition, Defendant asserted the attorney-client privilege regarding any
4  communications between him and his trademark attorney and is therefore not claiming any
5  advice of counsel defense.  Burgess Dep., 95:3-16.

## LEGAL STANDARD

7       Summary judgment is appropriate when no genuine issue of material fact exists and the
8  moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317
9  (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the
10 court those portions of the material on file that it believes demonstrates the absence of any
11 genuine issues of material fact," the burden of production shifts and "the non moving party must
12 set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a
13 genuine issue for trial.'"  T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d
14 626, 630 (9th Cir. 1987)(quoting Fed.R.Civ.P. 56(e)).  As to the specific facts offered by the
15 nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the
16 light most favorable to the nonmoving party.  Id. at 630-31.
17      If the moving party meets its initial responsibility, the burden then shifts to the opposing
18 party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.
19 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
20      In attempting to establish the existence of this factual dispute, the opposing party may not
21 rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the
22 form of affidavits, and/or admissible discovery material, in support of its contention that the
23 dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must
24 demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
25 suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
26 Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that
27 the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
28 the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

"Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." Interstellar Starship Servs., Ltd. v. Epix Inc., 184 F.3d 1107, 1109 (9th Cir.1999).

**ANLIN'S MOTION FOR SUMMARY JUDGMENT**

Anlin moves for summary judgment on its first two causes of action for violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125 (d).

Defendant opposes the motion mainly on the basis that he did not have a bad faith intent to profit.

8

A.     Elements

Section 1125(d) provides in pertinent part:

(d) Cyberpiracy prevention

(1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person

(I) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that–

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark;

Therefore, Anlin must prove that (1) Defendant registered or used a domain name that is identical or similar to a (2) trademark that was distinctive when the domain name was registered or used; and (3) that he did so with a bad faith intent to profit from that mark. Bosley Medical Institute, Inc. v. Kremer, 403 F.3d 672, 680 (9th Cir. 2005).

B.     Analysis

   1.     *Identical or Similar Domain Names*

There is no factual dispute that Defendant registered domain names that are identical or similar to Anlin's mark. Indeed, the main portions of Defendant's domain names www.anlinwindows.com, www.anlinwindows.net, and www.anlinwindows.org are *identical* to Anlin's "Anlin Windows" mark. Similarly, except for the dash, the main portions of Defendant's domain names www.anlin-windows.com and www.anlin-windows.net, are *identical* to Anlin's mark.

In generally opposing an inference of wrongdoing, Defendant argues that he cannot be faulted because he is not a competitor of Anlin, but rather is using Anlin's mark to sell Anlin's windows. In support of his argument, he points out that his web site told visitors where Anlin was located, the types of windows it manufactures, provided a direct link to Anlin's web site and included a disclaimer. He also contends that the site did not represent that it was Anlin's site.

9

Defendant's argument mistakes the nature of cybersquatting liability. The focus of the inquiry is not on whether Defendant legitimately sold Anlin's windows or used Anlin's mark on his website. Indeed, Anlin is not trying to prohibit Defendant from selling its windows, nor is it objecting to the use of its name and mark on his website. Instead, the focus of the inquiry is on the use of Anlin's mark *in his domain name.* Focusing on the domain name, courts have concluded that the use of a disclaimer does not save a domain name from cybersquatting liability as the internet user must access the site before seeing the disclaimer. Coca Cola Co. v. Purdy, 382 F.3d 774, 783 (8th Cir. 2004) (material on site is not relevant to whether the domain name and mark are confusingly similar).

2. *Distinctiveness of Mark at Time Defendant Registered and Used Domain Names*

Nor is there any factual dispute that Anlin's mark was fanciful and distinctive at the time Defendant registered the domain names. Trademarks are generally categorized as generic, descriptive, fanciful, arbitrary, and suggestive. Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927 (9th Cir. 2005). Fanciful, arbitrary and suggestive marks "are deemed inherently distinctive and are automatically entitled to protection because they naturally 'serve[ ] to identify a particular source of a product.'" Id. (citations omitted). A "fanciful" mark is a combination of letters or other symbols signifying nothing other than the product or service to which the mark has been assigned. Little Caesar Enterprises, Inc. v. Pizza Caesar, Inc., 834 F.2d 568, 571 (6th Cir. 1987).

It is undisputed that the name "Anlin" is a combination of letters from the names of the owners. As such, it is a fanciful, distinctive mark that would otherwise have no meaning. Defendant registered "www.anlinwindows.com" on April 27, 2001, long after Anlin began using its fanciful mark in 1991.

Defendant contends that "Anlin Windows" was not distinctive on April 27, 2001, as the mark was first used in commerce on April 1, 2001. Defendant misunderstands the significance of a fanciful mark. Whether a mark is fanciful and therefore distinct does not depend on when it was first used in commerce in the context of an application for federal registration. Rather, it depends on the term itself, and a fanciful mark is deserving of protection from the inception of its

use, which in this case was 1991.  See eg. Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 700 (2nd Cir. 1961).  The mark was therefore distinctive at the time Defendant registered and used his domain names.

   3.  *Bad Faith Intent to Profit*

A finding of "bad faith" is an essential prerequisite to finding an ACPA violation. Interstellar Starship, 304 F.3d at 946.  15 U.S.C. § 1125(d)(1)(B) sets forth nine factors for the courts to consider in determining whether a person has a bad faith intent.  However, "Congress did not mean these factors to be an exclusive list; instead 'the most important grounds for finding bad faith are the unique circumstances of the case, which do not fit neatly into the specific factors enumerated by Congress.'"  Id. at 946-947 (citations omitted).

Here, Anlin points to numerous factors in support of its argument that Defendant had a bad faith intent to profit from the mark.  For example, Defendant has no rights in the name Anlin, has not used four of the five domain names that he registered, and offered to sell all five domain names for $100,000.

In determining whether Defendant harbored a bad faith intent to profit, the time in question should be broken down into three distinct periods:[5]

1. April 27, 2001, the date Defendant registered www.anlinwindows.com, through the date Anlin discovered the web site;

2. The period between Anlin's first contact with Defendant regarding the web site through the time Anlin's counsel sent a cease and desist letter; and

3. The time from the cease and desist letter through the date that Defendant discontinued his use of the site.

With respect to the first two time periods, there are numerous material facts in dispute and Anlin cannot clearly establish that Defendant acted with a bad faith intent to profit.  While

---

[5] The Court recognizes that Anlin has objected to much of the evidence set forth by Defendant in his defense of this motion.  Without ruling on the objections and without forcing Anlin to waive those objections, the Court will view the evidence in the light most favorable to Defendant.  In other words, the Court will assume, for purposes of this motion only, that Defendant's allegations are true, and Anlin will not be deemed to have waived any objections to Defendant's evidence.

Anlin contends that Defendant acted in bad faith, Defendant argues that he was making fair use of the mark in the domain name by selling Anlin's windows. The parties do not dispute that they communicated during these periods, but the content of those conversations is decisively disputed. Looking at the facts in the light most favorable to Defendant, Anlin communicated its support of Defendant's use of the web site to sell windows. This apparent "consent" certainly causes a dispute of facts as to the second period of time at issue, and Anlin's apparent positive response suggests that they would not likely have objected to his use immediately after registering the domain name. Without such an objection, Defendant could be found to have had "reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful" pursuant to the safe harbor provision of the ACPA. 15 U.S.C. § 1125(d)(1)(B)(ii).

Defendant could also be found to fall within the safe harbor provision based on the fact, viewed in the light most favorable to him, that his motive in registering the domain name(s) was not to divert customers but instead to sell Anlin's windows in the manner in which the windows were meant to be sold. The facts establish that Anlin does not sell windows directly to the public through its website, which makes a diversion argument questionable. Moreover, Defendant was selling windows pursuant to the manner established by Anlin- through dealer distribution.

Therefore, based on the above, the Court finds that there is a genuine dispute of material fact as to Defendant's bad faith from the period of time from April 27, 2001, when he registered the domain name www.anlinwindows.com, until he received notice to cease and desist.

As to the final period of time- the period between the cease and desist letter through the date Defendant actually stopped using the domain name, the outcome is very different. At the hearing, Defendant admitted that he was asked to stop using the domain name in February, 2005, but continued to do so until July 2005. During that period, he was on notice that Anlin objected to his use based on the affect the web site had on Anlin's dealers, and his continued use resulted in an unfair advantage over other dealers. The facts, even when viewed in the light most favorable to Defendant, establish that he had a bad faith intent to profit after he was instructed to stop using the site but continued to do so.

In attempting to establish a dispute as to a material fact, Defendant relies again on the safe harbor provision and characterizes his use as fair and lawful. He also contends, without support, that the right to use the mark to sell genuine trademark products extends into cyberspace, including a domain name.

Defendant relies mainly on Ty, Inc. v. Perryman, 306 F.3d 509 (7th Cir. 2002), where the court proceeded under a dilution analysis in determining whether the site bargainbeanies.com infringed upon the trademark "Beanie Babies." In not finding infringement, the court explained:

> A byproduct (or perhaps additional goal) is the creation of a secondary market, like the secondary market in works of art, in which prices on scarce Beanie Babies are bid up to a market-clearing level. Perryman is a middleman in this secondary market, the market, as we said, that came into existence as the result, either intended or foreseen, of a deliberate marketing strategy. That market is unlikely to operate efficiently if sellers who specialize in serving it cannot use "Beanies" to identify their business. Perryman's principal merchandise is Beanie Babies, so that to forbid it to use "Beanies" in its business name and advertising (Web or otherwise) is like forbidding a used car dealer who specializes in selling Chevrolets to mention the name in his advertising.

Ty, 306 F.3d at 513.

However, as the Court explained in its February 6, 2007, order denying Defendant's motion to amend, the Ty case is distinguishable. The domain name at issue there contained only a *portion* of Ty's trademark, i.e., "Beanies," versus the use of the *entire* trademark in Defendant's domain name. Moreover, "bargainbeanies.com" does not reference the name of the actual company that produces the product, while "www.anlinwindows.com" refers to the name of actual company that produces the Anlin windows. The Ty case, then, does not support Defendant's argument that his use was lawful and proper, nor does it negate a finding of bad faith.

Finally, insofar as Defendant relies on his affirmative defense of estoppel and assuming he sufficiently pled the defense, it does not save him from a finding of bad faith *after* he was instructed to stop using the domain name. He relies on a 2003 phone call in which he was allegedly granted permission to use the domain name. Assuming that this is true for purposes of this motion, the clear notice to cease and desist would undoubtedly inform Defendant that his use was no longer permitted, and would therefore negate any claim that he was relying, in good faith, on an earlier instance of alleged consent.

Based on the above, the Court finds that Anlin is entitled to summary judgment on its first and second causes of action for violation of the ACPA.

B.   Damages

Anlin requests statutory damages, an injunction, the transfer of the domain names and an award of attorneys' fees.

   1.   *Statutory Damages*

15 U.S.C. § 1117(d) provides:

> In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

Anlin requests damages under this section in the amount of $10,000 per domain name, for a total award of $50,000. Pursuant to the language of the statute, however, the Court has discretion in determining the amount of damages. In the instant case, Anlin neither proved nor alleged that it suffered any damage. Although its dealers complained about Defendant's web site, there is no allegation that Anlin lost any window sales, or dealers, as a result. Nor is there any proof of actual diversion. Additionally, although intent is not a necessary element, Defendant's intent was to continue to sell windows, rather than wrongfully profit from the web site. Taking these factors into consideration, Anlin has made no showing that Defendant interfered with its business in any meaningful way, or was anything other than a nuisance. Accordingly, the Court finds that $2,500 per domain name, for a total award of $12,500, is a just result in this case.

   2.   *Injunctive Relief*

Pursuant to 15 U.S.C. § 1116(a), Anlin requests an injunction (1) restraining Defendant from using its trade name or trademarks, or any other mark or domain name substantially similar thereto, in advertising or selling any goods or services; and (2) restraining Defendant from using or holding the registration for the five domain names at issue. Anlin's requested injunctive relief is granted.

3.      *Transfer of Domain Names*

Pursuant to 15 U.S.C. § 1125(d)(1)(C), Anlin requests that the domain names be transferred to it. Anlin's request is granted. Defendant shall transfer the five domain names at issue to Anlin within ten (10) days of the date of service of this order.

4.      *Attorneys' Fees*

Finally, pursuant to 15 U.S.C. § 1117(a), Anlin requests an award of awarded attorneys' fees. Section 1117(a) allows the court to award attorneys' fees to the prevailing party in "exceptional cases." The Committee for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814 (9th Cir. 1996) (a trademark case is exceptional when the defendant's conduct is malicious, fraudulent, intentional or willful). Even in exceptional cases, the decision to award fees remains in the discretion of the court. Burger King Corp. v. Pilgrim's Pride Corp., 15 F.3d 166, (11th Cir. 1994).

Anlin argues that this case is exceptional because Defendant knew of the trade name before he started to use the site, the products are the same, and he was notified several times of his infringing conduct but continued anyway. Earthquake Sound Corp. v. Bumper Industries, 352 F.3d 1210, 1218 (9th Cir. 2002).

The Court declines to award attorneys' fees for two reasons. First, the Court has not disposed of all claims and the action has not been completely resolved. Second, even if this motion disposed of the action, the facts of this case are not "exceptional." Although Defendant may have knowingly continued to use the web site for a period of time after being notified to cease and desist, there is not sufficient evidence of willful, deliberate or malicious intent. Defendant's status as a pro se litigant also weighs against an award of attorneys' fees. Therefore, Anlin's request is denied.

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant moves for summary judgment on the third through seventh causes of action in Anlin's complaint. In opposition, Anlin reiterates that the issue is Defendant's use of its marks in his domain name, not his use of its marks on his website as advertising for its products.

A.     Causes of Action Three Through Seven

To prevail on trademark infringement claim under Lanham Act claims, a plaintiff must show that defendant used its trademark in commerce, and that the use was likely to confuse customers as to the source of the product. 15 U.S.C. §§ 1114, 1125. " 'Likelihood of confusion' is the basic test for ⋯ trademark infringement." Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc., 285 F.3d 848, 854 (9th Cir. 2002) (citations omitted). It exists "whenever consumers are likely to assume that a mark is associated with another source" because of similarities between two marks. Id. (citations omitted).

Defendant argues that while it is undisputed that he used "www.anlinwindows.com" in commerce and sold Anlin's windows through the site, Anlin cannot demonstrate that customers were confused as to the source of the product. Under this theory, Defendant argues that his actions are not unlawful and therefore Anlin's Third Cause of Action for Trademark Infringement and Fifth Cause of Action for Trademark Infringement Under State Common Law must fail as a matter of law. Further, because actions pursuant to statutory unfair competition, Cal. Bus. & Prof. Code § 17200, are "substantially congruent to claims made under the Lanham Act, " Cleary v. News Corp., 30 F.3d 1255, 1263 (9th Cir. 1994), Defendant contends that Anlin cannot prevail on the Fourth Cause of Action for Federal Unfair Competition, the Sixth Cause of Action for Statutory Unfair Competition pursuant to section 17200, and the Seventh Cause of Action for Common Law Unfair Competition. In support of his argument, he cites Sebastian Int'l, Inc. v. Longs Drug Stores Corp., 53 F.3d 1073 (9th Cir. 1995), which deals with infringement in the context of a first purchaser *reselling* a product under the producer's trademark, and Monte Carlo Shirt, Inc. v. Daewoo, Int'l (Am) Corp., 707 F.2d 1054 (9th Cir. 1993) (unauthorized sale of a genuine product bearing a true mark does not constitute a

1 trademark violation because there was no possibility of buyer confusion as to the source, origin,
2 or sponsorship of goods).
3   Defendant's contention that Anlin cannot show confusion is not supported by any
4 evidence and is merely a conclusory statement.  Anlin argues, and this Court agrees, that a triable
5 issue of material fact exists as to the likelihood of confusion.  Indeed, neither party has produced
6 sufficient evidence on summary judgment to compel a conclusion that there is no genuine
7 dispute.
8   Additionally, Defendant's estoppel defense fails for the reasons cited above.
9   Defendant's cross-motion for summary judgment is therefore denied.

## CONCLUSION

IT IS HEREBY ORDERED that:

1. Anlin's motion for summary judgment on the first and second causes of action for violation of the ACPA is GRANTED;

2. Anlin's request for an INJUNCTION IS GRANTED.  Defendant is prohibited from (1) using its trade name or trademarks, or any other mark or domain name substantially similar thereto, in advertising or selling any goods or services; and (2) using or holding the registration for the five domain names at issue;

3. Anlin's REQUEST TO TRANSFER the domain names from Defendant's control to its control is GRANTED.  Defendant SHALL effectuate transfer of the five domain names at issue within ten (10) days of the date of service of this order;

4. Anlin's request for attorneys' fees is DENIED; and

5. Defendant's cross-motion for summary judgment on the third through seventh causes of action is DENIED.

IT IS SO ORDERED.

Dated:  **March 5, 2007**      /s/ **Dennis L. Beck**
3b142a            UNITED STATES MAGISTRATE JUDGE