# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANLIN INDUSTRIES, INC., a California Corporation, | ) ) ) | 1:05cv1317 DLB |
| | ) ) ) | ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document 147) |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Document 149) |
| PAUL BURGESS, | ) ) ) ) | |
| Defendant. | ) ) | |

Before the Court are the parties' cross-motions for summary judgment, or in the alternative, summary adjudication. The motions were heard on May 15, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge. John G. Michael appeared on behalf of Plaintiff Anlin Industries, Inc. ("Anlin"). Defendant Paul Burgess ("Defendant") is proceeding pro se and appeared on his own behalf.

## BACKGROUND

Anlin filed the instant action on October 15, 2005, alleging the following causes of action: (1) violations of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"); (2) infringements of federally registered trademarks in violation of 15 U.S.C. § 1114(1); (3) unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) trademark infringement under state common law; (5) trademark infringement under

1

California law; and (6) unfair competition under state law.  The allegations are based on Defendant's registration and use of domain names alleged to be identical or confusingly similar to Anlin's federally registered and unregistered trademarks and trade names.

After numerous motions to dismiss Defendant's counterclaims and affirmative defenses, Defendant was allowed leave to plead an estoppel defense.  On December 24, 2006, Defendant moved to amend his answer to include the affirmative defenses of "fair use/first use" and acquiescence, as well as a promissory estoppel counterclaim.  The Court denied the motion on February 6, 2007, finding in part that the facts of the case did not support either a fair use defense or the first sale defense.

On February 9, 2007, Defendant filed his answer, which included the estoppel affirmative defense.

On March 5, 2007, the Court issued an order on the parties' cross-motions for summary judgment.  The Court granted Anlin's motion for summary judgment on its first two causes of action under the ACPA based in part on a finding that Defendant harbored a bad faith intent to profit when he continued to use the domain name after receiving a cease and desist letter from Anlin.  The Court awarded statutory damages in the amount of $12,500, noting that Anlin did not show that Defendant interfered in its business in "any meaningful way."  The Court also granted injunctive relief and ordered Defendant to transfer the five domain names at issue to Anlin.  Anlin's request for attorney's fees was denied.

Defendant filed a notice of appeal on March 29, 2007.

On April 11, 2007, the Court granted Anlin's motion to dismiss the third through seventh causes of action without prejudice and entered judgment.

On November 26, 2008, the Ninth Circuit Court of Appeals issued its order reversing this Court's grant of summary judgment and remanded the action for further proceedings.  The Court of Appeals found that many of the disputed facts identified by this Court relating to a bad faith intent to profit for the period of time prior to Anlin's cease and desist letter were also in dispute for the period of time *after* the letter.  The Court remanded the action to allow this Court to "address the factual disputes that cannot be resolved on a motion for summary judgment."

Anlin filed its first amended complaint on January 20, 2009, reinstating all six causes of action alleged in its original complaint.

On January 29, 2009, Defendant filed his answer, which included the affirmative defenses of fair use and estoppel.

On March 30, 2009, Defendant filed his motion for summary judgment. Anlin filed its motion for summary judgment on April 14, 2009.

## UNDISPUTED FACTS[1]

Anlin, a manufacturer of vinyl replacement doors and windows, filed Articles of Incorporation in 1991 and began manufacturing its products under a license agreement with Certainteed Corporation. Declaration of Eric Vidmar, filed Dec. 21, 2006 ("Vidmar Dec."), ¶¶ 2-3. The name "Anlin" is a combination of the middle name of the founder of the company and his wife's first name. The founder's middle name is Antone and his wife's name is Linda. The first few letters of each name forms "Anlin." Vidmar Dec. ¶ 2.

Under the license agreement with Certainteed, Anlin manufactured windows for Certainteed but was permitted to manufacture its own brand of windows and doors. Vidmar Dec. ¶ 3. The windows manufactured for Certainteed, as well as the sales literature created for Certainteed, contained stickers identifying Anlin as the source of the windows. Vidmar Dec. ¶ 3. Delivery trucks contained both the Certainteed and Anlin names. Vidmar Dec. ¶ 3. Anlin produced windows for Certainteed and its own brand from 1991 through 2001. Vidmar Dec. ¶ 3. In addition, from 1993 through 2001, Anlin sold a line of patio doors and custom made windows under the Anlin name. Vidmar Dec. ¶ 3.

On March 30, 1998, Anlin registered the domain name "www.anlin.com." Vidmar Dec. ¶ 4. Prior to the year 2001, when the license agreement with Certainteed was set to expire, Anlin decided not to renew the agreement and prepared to enter the market with a full line of windows and doors without the Certainteed name. Vidmar Dec. ¶ 4. In preparation, Anlin created sales literature, truck logos, t-shirts and other promotional merchandise with the logos "Anlin

---

[1] The facts of this action have not changed since the Court's March 5, 2007, order.

3

Windows" and "Anlin Window Systems." Vidmar Dec. ¶ 4. It also created new stickers with the logos to be applied to windows before delivery. Vidmar Dec. ¶ 4. Anlin made presentations to dealers who sold Certainteed windows in an effort to persuade them to carry its new line. Vidmar Dec. ¶ 4.

On September 27, 2000, Anlin filed an application with the U.S. Patent and Trademark Office to register the mark "Anlin Windows." The mark was first used in commerce on April 1, 2001, and was registered on July 30, 2002, as Reg. No. 2602374. Vidmar Dec. ¶ 5. On November 19, 2002, Anlin applied to register the mark "Anlin Window Systems." That mark was registered on December 2, 2003, as Reg. No. 2788866. Vidmar Dec. ¶ 5. Anlin's marks "Anlin Windows" and "Anlin Window Systems" are used on its products, trucks and materials. Vidmar Dec. ¶ 10.

Over the years, Anlin has spent millions of dollars advertising and promoting its windows and is now the leading manufacturer of replacement windows and doors with approximately $65 million in annual sales. Vidmar Dec. ¶ 6. Anlin sells its windows and doors in several states, although the bulk of its business is in California. Vidmar Dec. ¶ 6. Anlin uses its website "www.anlin.com" as a means of educating the public and dealers about its products. Vidmar Dec. ¶ 6.

Anlin does not sell directly to consumers. Rather, it sells its windows and doors through a network of approximately 40 dealers. Vidmar Dec. ¶ 6. This dealer network is very important to Anlin's business, as the industry competes for both window sales and dealers. Vidmar Dec. ¶ 6. Anlin and Defendant are not competitors.

Defendant first learned of Anlin when it was promoting its new line in late 2000 or early 2001. Deposition of Paul Burgess ("Burgess Dep.") 19:18-21; 20:6-12, Vidmar Dec. ¶ 4. Defendant recalls Matt Infeld coming to Ultimate Home Windows and presenting the new windows. Burgess Dep., 22:28-23:9. This trip was made before April 2001. Vidmar Dec. ¶ 4.

On April 27, 2001, Defendant registered the domain name "www.anlinwindows.com." Burgess Dep. 40:16-19. Defendant was aware of Anlin before he registered the domain name and knew that Anlin had already registered "www.anlin.com" as its corporate web site. Burgess

4

Dep. 43:23-44:8; 47:2-5; 47:19-21; 51:11-17; 52:15-53:5; 53:19-54.5.  Defendant did not use "www.anlinwidows.com" until 2003, when he started using the web site to attract potential purchasers and develop leads to sell windows.  Burgess Dep., 40:16-23; 48:24-49:6.  He also used the site to educate consumers.  Burgess Dep., 67:17-25.

Defendant used the word "Anlin" as a meta tag to draw potential customers searching the web to his site.  Burgess Dep., 46:9-14.  The only thing that distinguishes Defendant's domain name from Anlin's trademark "Anlin Windows" is the .com at the end.  Burgess Dep. 48:16-23.  Beginning in 2004, the home page on Defendant's site included the banner "Welcome to Anlin Windows."  Burgess Dep., 73:5-8.  The web site contained a picture of Anlin's manufacturing facility and truck, as well as Anlin's copyrighted sales material from its brochures.  Burgess Dep. 131:9-133:11.

The site posted a notice at the top of the page and included a direct link to Anlin's corporate web site, "www.anlin.com."  Exhibit 16, attached to Defendant's Undisputed Facts in Opposition.  The site never stated that it was the official corporate website of Anlin, or that it was sponsored by Anlin.  Declaration of Paul Burgess ("Burgess Dec."), ¶ 16.

Defendant traveled throughout Northern and Southern California at his own expense selling and installing Anlin's windows.  Burgess Dec. ¶ 6.

On February 22, 2004, Defendant registered the domain name "www.anlinwindows.net." Declaration of John G. Michael ("Michael Dec.") ¶ 2.  On March 21, 2004, Defendant registered the names "www.anlinwindows.org," "www.anlin-windows.com" and "www.anlin-windows.net."  Michael Dec. ¶ 3.  Defendant has never used these four web sites for any purpose. Burgess Dep. 116:11-117:13; 148:23-149:6.

Anlin subsequently received complaints from four of its dealers about Defendant's web sites.  Vidmar Dec. ¶ 7; Declaration of Annette Legaspi, filed on Dec. 21, 2006 ("Legaspi Dec."), ¶ 3; Declaration of Teri Zingarelli, filed on Dec. 21, 2006 ("Zingarelli Dep."), ¶ 3; Declaration of Scott Sharples, filed on Dec. 21, 2006 ("Sharples Dec."), ¶ 3.

Each dealer believed that the site was confusing and deceiving, and could divert business from dealers who had spent money and effort to develop leads.  Vidmar Dec. ¶ 7; Legaspi Dec. ¶

3; Zingarelli Dec. ¶ 3; Sharples Dec. ¶ 3.  They believed it was unfair for Defendant to reap the benefits of the advertising expenses that they incurred to promote the Anlin name.  Vidmar Dec. ¶ 7; Legaspi Dec. ¶ 3; Zingarelli Dec. ¶ 3; Sharples Dec. ¶ 3.

The four dealers who complained compromised approximately $10 million of Anlin's annual business.  Vidmar Dec. ¶7.  In response, Anlin contacted Defendant and explained that Anlin and its dealers objected to his use of the web site.  Vidmar Dec. ¶ 7.  During the course of the conversations about the web site in 2005, Defendant offered to sell the domain names to Anlin for $100,000.[2]  Vidmar Dec. ¶ 7; Burgess Dep., 102:1-20; 124:24-125:3.  Anlin refused to pay this amount.  Vidmar Dec. ¶ 7.

Defendant was notified to stop using Anlin's name and marks in the domain name, but he continued to do so.  Vidmar Dec. ¶ 7; Burgess Dep., 138:1-139:3.  Defendant placed Anlin's copyrighted material on his website without permission.  Vidmar Dec. ¶ 11; Burgess Dep., 139:7-23.

During his deposition, Defendant asserted the attorney-client privilege regarding any communications between him and his trademark attorney and is therefore not claiming any advice of counsel defense.  Burgess Dep., 95:3-16.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed.R.Civ.P. 56(e)).  As to the specific facts offered by the

---

[2] Defendant objects to the introduction of the offer of $100,000 because he characterizes it as a statement made in "compromise negotiations" that would be excluded under Rule 408.  However, the evidence is not offered to prove the validity or amount of the claim, but rather as an element of bad faith.  Such use is not prohibited under Rule 408.

6

nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the light most favorable to the nonmoving party. Id. at 630-31.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the

inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd,* 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita*,* 475 U.S. at 587 (citation omitted).

**DISCUSSION**

A.   ACPA Claims

This Court's prior grant of summary judgment on the ACPA claims was overturned by the Ninth Circuit on November 26, 2008. The reversal focused on the bad faith intent to profit element of an ACPA claim, with the Ninth Circuit suggesting that ultimately, bad faith is generally for the jury to determine unless the factors weigh heavily in one direction. 15 U.S.C.A. § 1125(d)(1)(B)(i); see also Interstellar Starship Serv. Ltd v. Epix Inc., 304 F.3d 936, 946 (9th Cir. 2002) ("the most important grounds for finding bad faith are 'the unique circumstances of the case, which do not fit neatly into the specific factors enumerated by Congress.") (internal citations omitted).

The facts before the Court have not changed. The Court is therefore bound by the Ninth Circuit's reversal and finds that there are disputed facts as to whether Defendant harbored a bad faith intent to profit. To the extent that Defendant believes that his use was lawful and therefore could not have been in bad faith, his argument is disclosed by the trademark discussion, below.

B.   Trademark Infringement Claims

Defendant moves for summary judgment on the trademark infringement claims because he believes that Anlin cannot show that his use was likely to cause confusion to consumers. In both its opposition and its own motion for summary judgment, Anlin contends that at most, Defendant had a permissive license that was revoked and his continued use constitutes de facto infringement.

To prevail on a trademark infringement claim under Lanham Act claims, a plaintiff must show that defendant used its trademark in commerce, and that the use was likely to confuse

customers as to the source of the product. 15 U.S.C. §§ 1114, 1125. "'Likelihood of confusion' is the basic test for. . . trademark infringement." Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc., 285 F.3d 848, 854 (9th Cir. 2002) (citations omitted).  It exists "whenever consumers are likely to assume that a mark is associated with another source" because of similarities between two marks. Id. (citations omitted).

The issue raised by this claim is a relatively novel.  A majority of trademark cases involve confusion over *goods or services*, the claim here is that the use of a trademark in a domain name and on the webpage which is used to sell the trademark owner's goods in a truthful manner constitutes infringement of the mark.  In other words, there is no confusion as to the source of the goods but as to the source of the webpage.  It is undisputed that Defendant used the site to sell Anlin windows in the manner in which they were meant to be sold.  Anlin asks the Court to find infringement based on its argument that the use of its mark "Anlin Windows" in the domain name caused confusion to consumers as to sponsorship and/or endorsement of the site.

Given the unconventional nature of Anlin's legal argument, most of the authority cited by the parties is not instructive.  In any event, this Court found in its prior summary judgment order as follows:

> Defendant's contention that Anlin cannot show confusion is not supported by any evidence and is merely a conclusory statement.  Anlin argues, and this Court agrees, that a triable issue of material fact exists as to the likelihood of confusion.  Indeed, neither party has produced sufficient evidence on summary judgment to compel a conclusion that there is no genuine dispute.

March 5, 2007, Order, at 17.

The evidence before this Court has not changed and there is no reason to depart from this prior finding.  Indeed, neither party offers significant evidence on the issue of confusion.  Anlin argues that Defendant's use of the trademark in the domain name, in combination with his use of Anlin's copyrighted material on the website, gives the impression that Anlin owned and/or endorsed the site.  An unsupported "impression," however, is not sufficient to establish the absence of disputed material facts.

Nor does Anlin's legal argument that Defendant's continued use after the termination of a permissive license constitutes de facto infringement compel a different result.  See eg., Sun

1  Microsystems, Inc. v. Microsoft Corp., 999 F.Supp. 1301 (N.D.Cal.,1998) ("Where a licensee
2  persists in the unauthorized use of a licensor's trademark, courts have found that the continued
3  use alone establishes a likelihood of consumer confusion").  Genuine issues of material fact
4  remain as to consent, i.e., if and when consent was given.  For example, the parties vehemently
5  dispute the dates of the dealer complaints and the date Anlin first became aware of Defendant's
6  site.  The consent issue also impacts Defendant's reliance on the fair use defense, placing this
7  issue, too, in dispute.

    Given the unchanged facts and this Court's prior finding, the Court concludes that whether Defendant's use of the trademark "Anlin Windows" in the domain name caused consumer confusion as to the source of the site is a disputed issue of material fact.  Defendant's contention that the disclaimers were sufficient to avoid confusion is likewise a disputed issue of material fact.  Defendant cites the Sixth Circuit's decision in The Taubman Co. v Webfeats, 319 F.3d 770, 777 (6th Cir. 2003), where the court held that under the Lanham Act, "it is irrelevant whether customers would be confused as to the origin of the web sites, unless there is confusion as to the origin of the respective products."  While this case is more on point than many cases in the Ninth Circuit, this Court remains bound by Ninth Circuit authority.  "Because of the intensely

//
//
//
//
//
//
//
//
//
//

factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." Interstellar Starship Servs., Ltd. v. Epix Inc., 184 F.3d 1107, 1109 (9th Cir.1999). The Court finds that the facts of this action are not outside of the Ninth Circuit's directive.

C.  <u>Trademark Infringement under State Common law, Trademark Infringement under California law, and Unfair Competition under State Law.</u>

Summary judgment must be denied on the state law claims for the same reasons the Court denied summary judgment on the federal trademark claims.

**CONCLUSION**

IT IS HEREBY ORDERED that the parties' cross-motions for summary judgment, or in the alternative, summary adjudication, are DENIED.

IT IS SO ORDERED.

Dated:  **June 26, 2009**                  **/s/ Dennis L. Beck**
                                           UNITED STATES MAGISTRATE JUDGE